UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| ELLEN A. STANLEY<br>7009 Spring Vista Court<br>Louisville, KY 40229 | )<br>)<br>)<br>) | |
| PLAINTIFF, | )<br>) | CIVIL ACTION NO. |
| v. | )<br>) | 3:19-cv-910-RGJ |
| FORD MOTOR COMPANY<br>One American Road, Room 612<br>Dearborn, MI 48126-1899 | )<br>)<br>)<br>) | |
| DEFENDANT. | )<br>)<br>) | |
| SERVE:   CT CORPORATION SYSTEM<br>306 W. MAIN ST., STE. 512<br>FRAKNFORT, KY  40601 | )<br>)<br>) | |

## COMPLAINT AND JURY DEMAND

Comes the Plaintiff, Ellen A. Stanley, by counsel, and for her Complaint for damages and Jury Demand against Defendant Ford Motor Company states as follows:

### PARTIES

1.      Plaintiff, Ellen A. Stanley, is and at all times pertinent hereto was a resident of Louisville, Jefferson County, Kentucky.

2.      Defendant, Ford Motor Company (hereinafter "Ford"), is and at all times pertinent hereto was a Delaware corporation with its principal place of business being located at One American Road, Room 612, Dearborn, MI 48126-1899. Ford owns and operates a regional assembly plant located at 2000 Fern Valley Road, Louisville, KY 40213.

1

**JURISDICTION AND VENUE**

3.    This Court has subject matter jurisdiction over the claims set forth herein pursuant to 28 U.S.C. § 1331, as this action arises under the provisions of 42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964, as amended). This Court has supplemental jurisdiction over Plaintiff's claims filed under the provisions of the Kentucky Civil Rights Act codified in KRS 344, pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

**STATEMENT OF PERTINENT FACTS**

5.    Plaintiff, Ellen A. Stanley, was hired by Ford Motor Company to work as a full-time line operator at its Louisville, Kentucky assembly plant on or about May 16, 1990. Plaintiff is an African American female.

6.    From around March 2019 and early April 2019 to the present, Plaintiff has been subjected to different terms and conditions of employment by both management and coworkers.

7.    These different terms and conditions of employment include, but are not limited to, being looked over for a position on "B crew" while "C crew" was being reduced despite having the most seniority, not being properly trained once finally placed on "B crew," being ignored and pushed aside by coworkers, being left on the assembly line to work alone, and being spoken to disrespectfully and differently than similarly situated employees of the Defendant.

8.    On or about April 1, 2019, Plaintiff reported to her new position on the door line of "B Crew." Plaintiff was being trained at her new position by a white female utility operator named Callie Bradley, who was acting as team leader, as well as another white female named

Molly [Last Name Unknown]. During the training, Callie and Molly were disrespectful towards the Plaintiff. Plaintiff stated that she was not to be spoken to in such a manner and Molly and Callie began to cry, prompting Supervisor Bart Berton to approach and investigate the situation. Berton removed Molly from the line and interviewed her privately. When Molly returned, she asked Plaintiff if she knew who her father was and stated that her father was on the launch team. Plaintiff continued to train until Molly got frustrated with Plaintiff again, told Plaintiff to just stay out of her way, and began to cry. Molly then called Berton over to them again and handed him her phone saying her father wanted to talk to Berton. After speaking on the phone for a few minutes, Berton returned and moved Plaintiff to a different area to train.

9.      Beginning on or about April 1, 2019, Plaintiff was treated differently than similarly situated younger employees whom were not African-American. Defendant has exhibited a pattern or practice of discriminating against older employees and African-Americans respectively in their terms and conditions of employment with the Defendant not only at assembly plants in Kentucky but in assembly plants in other States as well.

10.      Direct evidence of this discriminatory conduct engaged in by agents and employees of the Defendant as it pertains specifically to the Plaintiff include, but is not limited to, statements made to Plaintiff by Ralph Napier asking, "why don't you go where the old people are?" and "why do you want to work with these young people." On another occasion, Plaintiff reported to her supervisor, Shannon, that she felt a pop in her shoulder and needed medical evaluation. Shannon replied, "why do you want to work with young people anyway?" and suggested that Plaintiff should transfer to a position as an inspector due to her age and associated physical condition even though the position had less responsibility and lower pay.

11.     On or about April 2, 2019, Plaintiff made a written complaint to Human Resources regarding discrimination such as differential treatment in the terms and conditions of employment in the workplace.

12.     On or about April 16, 2019, Plaintiff was retaliated against by Defendant for engaging the protected activity described in paragraph 11 of the Complaint by being disciplined with "two strikes" for being on the premises on April 3, 2019 when she was not scheduled to work.  Agents and employees of the Defendant further threatened her at the point with the loss of her Team Leader position.

13.     On or about May 9, 2019, Plaintiff received a temporary bid for the launch team due to her level of seniority as a Team Leader. The launch team is responsible for testing new production models and training assembly line operators on their assembly when they enter production. While on the launch team, Plaintiff was threatened by one of the senior launch team members, Paul Kilkelly, father of Molly Kilkelly. Paul Kilkelly made a racially motivated statement to the Plaintiff that if she messed with his family, he would "hang Plaintiff in a tree." Mr. Kilkelly also told Plaintiff that if she told anyone of this threat that she would be sorry.

14.     On or about July 26, 2019, Plaintiff filed a Charge of Discrimination [Charge No. 474-2019-00739] with the Equal Employment Opportunity Commission's Louisville Office, alleging race discrimination, age discrimination, and retaliation.

15.     On or about September 12, 2019, the Equal Employment Opportunity Commission issued a "Notice of Right to Sue" on Plaintiff's Charge No. 474-2019-00739. A copy of this notice attached hereto as "Exhibit 1."  Plaintiff did not receive the "Notice of Right to Sue" in the mail from the EEOC until late September 2019.

16.    On or about October 28, 2019, Plaintiff was demoted from her Team Leader position and placed back on the production line.

17.    Upon information and belief, Plaintiff's Team Leader position was filled by a Caucasian male.

**COUNT I**

**DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT BASED UPON RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND KRS CHAPTER 344, THE KENTUCKY CIVIL RIGHTS ACT.**

18.    Plaintiff realleges each and every allegation set forth in paragraphs one through seventeen of the Complaint as if fully set forth herein.

19.    Plaintiff, as an African American, is a member of a protected class under Title VII of the Civil Rights Act of 1964 set forth at 42 U.S.C. § 2000e *et seq.* and the Kentucky Civil Rights Act, KRS Chapter 344.

20.    Defendant, Ford Motor Company, is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 set forth at 42 U.S.C. § 2000e *et seq*. and the Kentucky Civil Rights Act, KRS Chapter 344.

21.    During Plaintiff's employment with Ford Motor Company, the Plaintiff was subjected to racial discrimination in her transfer from "C Crew" to "B crew." At the time "C Crew" was being reduced, and Plaintiff was the most senior Team Leader in the "C Crew" trim department. Despite her seniority, Plaintiff was not initially placed in the "B Crew" trim department as a Team Leader. Plaintiff was eventually placed on the "B Crew" door line. Ford Motor Company refused to transfer Plaintiff to the "B Crew" because of her race – African American – and instead placed a Caucasian male in the position. Once on the "B Crew" door line, Plaintiff was subjected to harassment, threats, and differential treatment in the terms and

5

conditions of her employment by white co-workers and white supervisors. Plaintiff was also subjected to racially charged threats by a senior member of the launch team, Paul Kilkelly, when he threatened to "hang her in a tree" if she messed with his daughter.

22.     Plaintiff filed written complaints with Defendant's Human Resources Department regarding discrimination based upon her race and age and differential treatment in the terms and conditions of employment in the workplace.   Thereafter, racially motivated comments and adverse employment actions continued due to Plaintiff's race, African-American.

23.     On or about October 28, 2019, Plaintiff was demoted from her Team Leader position and placed back on the production line due to Plaintiff's race, African-American.

24.     Defendant, Ford Motor Company, violated 42 U.S.C. § 2000e-2 (Title VII of the Civil Rights Act of 1964), and KRS 344.040 (the Kentucky Civil Rights Act) by discriminating against the Plaintiff based upon her race as more fully alleged in this Count of the Complaint.

25.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer lost wages and benefits in the past, future lost wages and benefits, medical expenses in the past and future medical expenses, severe mental and emotional distress, loss of enjoyment of life, personal indignity, humiliation, and other non-pecuniary losses.

26.     Defendant's conduct in discriminating against the Plaintiff based upon her race is properly categorized as oppressive, malicious, exceptionally reprehensible, and demonstrated a total disregard for or reckless indifference to the federally protected rights and liberties of the Plaintiff. Accordingly, and award of punitive damages against Defendant Ford Motor Company is warranted under Title VII of the Civil Rights Act of 1964.

## COUNT II

## AGE DISCRIMINATION IN VIOLATION OF THE ADEA AND KCRA

27. Plaintiff realleges each and every allegation set forth in paragraphs one through twenty-six as if fully set forth herein.

28. At all times relevant to the allegations set forth in the Complaint, Plaintiff was over the age of 40.

29. At all times relevant hereto, Plaintiff was an outstanding employee.

30. Beginning on or about April 1, 2019, Plaintiff was treated differently than similarly situated, younger employees, on account of her age. Defendant has exhibited a bias against older workers and has engaged in a pattern and practice of age discrimination at the assembly plant where Plaintiff worked as well as other assembly plants in different States.

31. More specifically, Plaintiff was subjected to harassment and disparate treatment due to her age. Direct evidence of age discrimination includes, but is not limited to, statements made to Plaintiff by Ralph Napier asking, "why don't you go where the old people are?" and "why do you want to work with these young people?" On another occasion, Plaintiff reported to her supervisor, Shannon that she felt a pop in her shoulder and needed medical evaluation. Shannon replied, "why do you want to work with young people anyway?" and suggested that Plaintiff should transfer to a position as an inspector due to her age and related physical condition despite the fact that the position had less responsibility and lower pay.

32. Defendant's conduct constitutes unlawful, willful, and malicious age discrimination in violation of Plaintiff's rights under the Age Discrimination in Employment Act of 1967 (hereinafter "ADEA") and the provisions of the Kentucky Civil Rights Act, KRS Chapter 344 *et seq.* (hereinafter "KCRA").

33.     As a direct and proximate result of the discriminatory practices and actions of the Defendant as more fully described in this Count of the Complaint in violation of the ADEA and the KCRA, Plaintiff has suffered: (a) substantial mental anguish and emotional distress in the past and will continue to suffer substantial mental anguish and emotional distress in the future; (b) humiliation and personal indignity (past and future); (c) loss of enjoyment of life; (d) future employment opportunities; (d) harmful damage to her reputation as a Team Leader; (e) lost wages and benefits in the past and future; and, (f) other pecuniary and non-pecuniary losses.

34.     Plaintiff has endured substantial mental anguish and emotional distress and loss of wage and benefits as the direct and proximate result of Defendant's violation of her civil rights as alleged herein. Plaintiff is reasonably certain to continue to suffer these damages in the future. Plaintiff is entitled to the rights and remedies at law provided by the ADEA, 29 U.S.C. § 216(b) and KRS Chapter 344, including actual damages, compensatory damages, liquidated damages, and attorney's fees.

## COUNT III

### RETALIATION IN VIOLATION OF THE ADEA

35.     Plaintiff realleges each and every allegation set forth in paragraphs one through thirty-four as if fully set forth herein.

36.     Plaintiff engaged in "protected activity" within the meaning of the ADEA when she complained of numerous acts of discrimination based upon her age to agents and/or employees of the Defendant as more fully described in this Complaint.

37.     As alleged herein, Defendant, acting by and through its officers, managing agents, and/or supervisors, illegally retaliated against Plaintiff in light of Plaintiff's complaints of age discrimination by unlawfully subjecting her to unjust scrutiny in her job performance, by

removing certain supervisory responsibilities, by making false allegations of misconduct resulting in unwarranted disciplinary action against the Plaintiff, by making unwarranted and derogatory comments about the Plaintiff's ability to perform her job with the Defendant satisfactorily, by subjecting her to different terms and conditions of employment with the Defendant when compared to other comparable employees who had not engaged in "protected activity," and by subjecting the Plaintiff to adverse employment actions up to and including Plaintiff's demotion from Team Leader on or about October 28, 2019.

38.     There is a causal connection between the Plaintiff's complaints to Defendant's management personnel regarding discrimination in the workplace based upon the Plaintiff's age and the retaliatory actions taken against the Plaintiff after the complaints were made as more fully described herein. Moreover, these unlawful and retaliatory actions by the Defendant were made by the Defendant, in part, to dissuade the Plaintiff from making future complaints regarding discrimination in the workplace to the Defendants, and would likely have dissuaded a reasonable worker from making or supporting claims of discriminatory conduct against the Defendants in the future.

39.     As a direct and proximate result of the Defendant's willful, knowing, and intentional retaliation against Plaintiff as alleged in this Count of the Complaint, Plaintiff has suffered: (a) substantial mental anguish and emotional distress in the past and will continue to suffer substantial mental anguish and emotional distress in the future; (b) humiliation and personal indignity (past and future); (c) loss of enjoyment of life; (d) harmful damage to her reputation as a Team Lead; (e) liquidated damages; and, (f) other pecuniary and non-pecuniary losses.

40.     Based upon the foregoing allegations in this Count of the Complaint, Plaintiff is entitled to the rights and remedies at law provided by the ADEA for retaliation claims including, but not limited to, all actual damages, compensatory damages, liquated damages, attorney's fees, and such other legal relief and/or damages as may be available and appropriate under the law.

### COUNT IV

### RETALIATION IN VIOLATION OF THE KCRA – KRS § 344.280—FOR PLAINTIFF'S ENGAGEMENT IN "PROTECTED ACTIVITY" RELATED TO AGE DISCRIMINATION

41.     Plaintiff realleges each and every allegation set forth in paragraphs one through forty of the Complaint as if fully set forth herein.

42.     KRS 344.280(1), makes it unlawful for a person:

To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation proceeding or hearing under this chapter.

43.     Plaintiff engaged in "protected activity" within the meaning of KRS 344.280 when she opposed the discriminatory practices of the Defendant based upon her age by complaining of such discrimination in the Defendant's workplace to agents and/or employees of the Defendant as more fully described in this Complaint.

44.     As alleged herein, the Defendant, acting by and through its officers, managing agents, supervisors and/or employees, illegally retaliated and discriminated against Plaintiff in light of Plaintiff's complaints of age discrimination by: unlawfully subjecting her to unjust scrutiny in her job performance; taking away certain supervisory responsibilities she held prior to engaging in protected activity within the meaning of the KCRA; making false allegations of misconduct resulting in unwarranted disciplinary action against the Plaintiff; making unwarranted, threatening and derogatory comments about the Plaintiff including comments

10

concerning her ability to perform her job with the Defendant satisfactorily; subjecting her to different terms and conditions of employment with the Defendant when compared to other comparable employees who had not engaged in "protected activity;" and by subjecting Plaintiff to adverse employment actions up to and including Plaintiff's demotion from Team Leader, all in violation of the provisions of KRS 344.280.

45.     There is a causal connection between the Plaintiff's complaints to Defendant's management personnel regarding discrimination in the workplace based upon the Plaintiff's age and the retaliatory and discriminatory actions taken against the Plaintiff as more fully described in this Count of the Complaint. Moreover, these unlawful, discriminatory, and retaliatory actions by the Defendant were made by the agents and/or employees of the Defendant, in part, to dissuade the Plaintiff from making future complaints regarding discrimination in the workplace to the Defendant, and would likely have dissuaded a reasonable worker from making or supporting claims of discriminatory conduct against the Defendant in the future.

46.     As a direct and proximate result of the Defendant's willful, knowing, and intentional retaliation against Plaintiff as alleged in this Count of the Complaint in violation of KRS 344.280, Plaintiff has suffered: (a) substantial mental anguish and emotional distress in the past and will continue to suffer substantial mental anguish and emotional distress in the future; (b) humiliation and personal indignity (past and future); (c) loss of enjoyment of life; (d) future employment opportunities; (e) harmful damage to her reputation as a Team Leader; (e) lost wages and benefits in the past and future; and, (f) other non-pecuniary losses.

47.     Based upon the foregoing allegations in this Count of the Complaint, Plaintiff is entitled to the rights and remedies at law provided by KRS 344.280, including, but not limited to, all actual damages, compensatory damages, attorney's fees, and such other legal and equitable

relief and/or damages as may be available and appropriate under the provisions of KRS 344.280 and the other provisions of the KCRA.

## COUNT V

### RETALIATION IN VIOLATION OF TITLE VII AND THE KCRA FOR PLAINTIFF'S ENGAGEMENT IN "PROTECTED ACTIVITY" RELATED TO RACE DISCRIMINATION

48.     Plaintiff realleges each and every allegation set forth in paragraphs one through forty-seven of the Complaint as if fully set forth herein.

49.     Plaintiff engaged in an activity protected by Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act when she complained of the numerous acts of discrimination described in this Complaint based upon her race—African-American. As alleged herein, the Defendant, by and though its officers, managing agents, and/or supervisors, illegally retaliated against Plaintiff by unjustly subjecting her to scrutiny, false allegations of misconduct, and unwelcome and derisive comments solely because she had reported the aforementioned race discrimination in April 2019. Defendant had no legitimate reason for any such act. Each said act of retaliation is in violation of 42 U.S.C. § 2000e *et seq.* and the Kentucky Civil Rights Act.

50.     After complaining to Human Resources in April 2019 about race discrimination, Defendant took adverse employment actions against the Plaintiff including, but not limited to, Plaintiff's demotion from her Team Leader position on October 28, 2019.

51.     There is a causal connection between the Plaintiff's complaint to Human Resources regarding race discrimination in the workplace and the adverse employment actions taken against her thereafter.

52.     As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination and retaliation against Plaintiff as alleged in this Count of the

Complaint, Plaintiff has suffered and will continue to suffer lost wages and benefits in the past, future lost wages and benefits, medical expenses in the past and future medical expenses, severe mental and emotional distress, loss of enjoyment of life, personal indignity, humiliation, and other non-pecuniary losses.

53.     Defendant's conduct in retaliating against the Plaintiff as alleged in this Count of the Complaint is properly categorized as oppressive, malicious, exceptionally reprehensible, and demonstrated a total disregard for or reckless indifference to the federally protected rights and liberties of the Plaintiff. Accordingly, and award of punitive damages against Defendant Ford Motor Company is warranted under Title VII of the Civil Rights Act of 1964.

**WHEREFORE**, Plaintiff, Ellen A. Stanley, demands judgment against the Defendant as follows:

1. Judgment against the Defendant in an amount sufficient to fully compensate the Plaintiff for damages including her lost wages and benefits in the past, future lost wages and benefits, her medical expenses incurred in the past and future medical expenses, severe mental and emotional distress, personal indignity, humiliation, and other non-pecuniary losses suffered as a result of Defendant's violations of Title VII of the Civil rights Act of 1964 (42 U.S.C. § 2000e *et seq*), the Kentucky Civil Rights Act, and/or the Age Discrimination in Employment Act of 1967, as alleged herein;

2. An award of punitive damages under Title VII of the Civil Rights Act of 1964;

3. For her costs expended herein;

4. For her reasonable attorney's fees as provided for by statute;

5. For a trial by jury;

6. For pre-judgment and post-judgment interest at the prevailing legal rate; and,

7. Any for any and all other relief that she may appear to be entitled including the right to equitable/injunctive relief.

Respectfully submitted,


___/s/_____Ryan Greer___
Charles W. Miller
T. Ryan Greer
**CHARLES W. MILLER & ASSOCIATES**
Waterfront Plaza, Suite 2104
325 West Main Street
Louisville, KY 40202
P: (502) 583-2300
F: (502) 583-2323
*COUNSEL FOR PLAINTIFF*